IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENNETH ZIMMERN, A Harris County Registered Voter, WILLIAM SOMMER, A Harris County Registered Voter, and CAROLINE KANE, A Harris County Registered Voter, <br><br>*Plaintiffs*, <br><br>v. <br><br>JUDGE LINA HIDALGO, in her official capacity as County Judge for Harris County, Texas TENESHIA HUDSPETH, in her official capacity as County Clerk for Harris County, Texas, <br><br>*Defendants*. | Civil Action No. |

## **COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

This case requires the court to decide an issue of first impression, that is, whether the United States Constitution provides voters the right to a secret ballot. If voters have the constitutional right to a secret ballot, this complaint requests the court to declare the system of voting in Harris County violates the constitutional rights of voters to a secret ballot and issue an injunction preventing Defendants from discovering or disclosing a voter's vote. Plaintiffs bring this action under 42 U.S.C. § 1983 for violations of The Equal Protection and Due Process Clause of the Fourteenth Amendment and for violations of the Freedom of Speech and Association Clauses of the First Amendment of the U.S. Constitution.

### INTRODUCTION

1. This Complaint seeks declaratory and injunctive relief arising from failures of Harris County Election officials to comply with the United States Constitution. The Defendants

1

deprive Plaintiffs and others similarly situated of their right to a secret ballot in violation of the First and Fourteenth Amendments to the United States Constitution. See, U.S. Const. Amend. I; U.S. Const. Amend. XIV. As a result of the Defendant's actions, Plaintiffs seek relief from this court under 42 U.S.C. § 1983, as well as declaratory and injunctive relief.

2. Harris County has implemented a system of voting which permits voters ballots to be traced back to the individual voter. To audit elections, Texas' public disclosure laws make public both the poll books of voting centers and the disclosure of ballots, the combination of which make it possible for anybody to trace certain voters back to their actual ballot. The system of auditability of the election required by the Texas Election Code in combination of using countywide vote centers defeats a voter's right to a secret ballot and Defendants, therefore, have traded the secrecy of elections for a level of transparency that violates a voter's right to a secret ballot.

3. The secret ballot, also known as the Australian ballot, is a now cornerstone of democratic processes around the world. Its significance lies in promoting free and fair elections, protecting voter privacy, and encouraging participation in the electoral process. One of the most crucial functions of the secret ballot is to safeguard the autonomy of the voter, protect the voter from undue influence and help eliminate corruption from the voting choices. By ensuring that votes are cast in private, individuals can express their preferences without fear of retribution or social pressure. Privacy is essential in democracies where certain political opinions may be unpopular or where voters may face repercussions for their choices, such as ostracism, retribution, extortion, bribery or job loss. The ability to vote confidentially allows individuals to prioritize their true beliefs and values, fostering a more genuine democratic expression.

4. Moreover, the secret ballot enhances the integrity of elections. By reducing the opportunities for coercion and vote buying, it creates a level playing field where candidates must appeal to voters based on their policies and character rather than through bribery, coercion or corrupt manipulation. This contributes to a healthier political environment, as candidates are encouraged to engage in meaningful dialogue with constituents, focusing on issues rather than leveraging intimidation or deceit.

5. The secret ballot also plays a critical role in boosting voter turnout. When individuals know that their votes are private, they feel more confident in participating in the electoral process. This increased participation leads to a representative government that reflects the will of the people. In contrast, in systems where voting is public, there is a disincentive for participation, as potential voters fear judgment or backlash based on their choices.

6. Historically, the implementation of the secret ballot has been a significant advancement in the fight for democratic rights. Routledge, Taylor & Francis Group, *How the Secret Ballot Changed Demcocracy*, Posted July 18, 2022, https://www.routledge.com/blog/article/how-the-secret-ballot-changed-Democracy?srsltid=AfmBOorpGhezXM8yZ6LrrWqm_EgUEjx7DkAS13Dsl255Zczhnmcu3t2C. Many movements around the world have advocated for this system as a means to ensure that elections are conducted fairly and transparently. *Id.* The adoption of the secret ballot has often accompanied broader social changes, including the expansion of suffrage and the fight against corruption in political systems. *Id.*

7. Accordingly, Plaintiffs seek a declaration that the United States Constitution's First and Fourteenth Amendment rights include the right to a secret ballot and that the Defendants' actions as described below violate the First and Fourteenth Amendments by

allowing the government and the public to discover how individuals voted. Plaintiffs seek preliminary and permanent injunctions and a declaratory judgment prohibiting election officials from taking any action that may violate the secrecy of any voter's ballot. Finally, and only if necessary, Plaintiffs request the Court order the Defendants to amend the system of voting in Harris County to protect the privacy of a voter's ballot.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights by Defendants, under color of state law, secured by the United States Constitution.

9. Plaintiffs and others similarly situated are denied voting rights, due process, and equal protection accorded them by the First and Fourteenth Amendments to the Constitution of the United States under color of state law by the actions of the Defendants.

10. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States and involve the assertion of a deprivation, under color of state law, of rights guaranteed under the Constitution of the United States.

11. This Court has personal jurisdiction over Defendant Teneshia Hudspeth, who is sued in her official capacity as Harris County Clerk.

12. This Court has personal jurisdiction over Defendant Judge Lina Hidalgo, who is sued in her official capacity as Harris County Judge.

13. Venue in in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Plaintiffs and Defendants all reside in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

14. This Court has authority to enter a declaratory judgment in this action under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

15. Kenneth Zimmern is a qualified and registered voter in Harris County, Texas. As an attorney licensed by the Bar of the State of Texas, he is concerned about the negative effects of the lack of secrecy regarding his ballot and potentially facing retribution from anyone who could discover his ballot. He voted in the 2024 GOP Primary and 2024 General Election.

16. William Sommer is a qualified and registered voter in Harris County, Texas. He is concerned about the negative effects of the lack of secrecy regarding his ballot and potentially facing retribution from anyone who could discover his ballot. He voted early in the 2024 General Election. He did not vote in the 2024 primary election out of fear that his ballot from the primary election would be exposed. He is also a Harris County election clerk for early voting and an alternative judge on election day.

17. Caroline Kane is a qualified and registered voter in Harris County, Texas. She is concerned about the negative effects of the lack of secrecy regarding her ballot and potentially facing retribution from those who have discovered her ballot. Ms. Kane voted in the 2024 Republican Primary and has had her ballot disclosed and made public. She was also a candidate for the United Stated House of Representatives this election cycle, earning the Republican nomination for Congressional District 7. She lost to the Democrat nominee, Hon. Lizzie Fletcher.

18. Defendant Judge Lina Hidalgo is the County Judge for Harris County, Texas. As such, she is charged with the administration of federal and state election laws, including overseeing the election process within the county and ensuring compliance with state laws and

regulations. She is sued in her official capacity and may be served with process at her official county office address at 1001 Preston St., suite 500, Houston, Texas 77002. A courtesy filed-stamped copy of this complaint and attachments is being sent to the Harris County Attorney, Christian D. Menefee, by email at Communication@harriscountytx.gov and by certified mail at 1019 Congress, 15th Floor, Houston, Texas 77002.

19. Defendant Teneshia Hudspeth is the County Clerk of Harris County, Texas. As such, she is charged by Texas state statutes with the administration of federal and state election laws. The County Clerk is also the Chief Election Official for Harris County. The County Clerk's office conducts special, primary, and general elections for Harris County. She is sued in her official capacity and may be served at her official county office address at 1001 Preston St., suite 500, Houston, Texas 77002. Again, the Harris County Attorney, Christian D. Menefee, is being sent a courtesy file-stamped copy of the complaint and attachments by both email and certified mail.

20. Although no direct challenge to the constitutionality of a Texas Statute is made in this complaint, a courtesy file-stamped copy of the complaint is being sent to the Texas Attorney General, Ken Paxton, at Office of the Attorney General, P.O. Box 12548, Austin, Texas 78701.

## FACTUAL ALLEGATIONS

### A. *The Texas Voting System*

21. In 2009, the Texas state legislature passed HB 719, which authorized the establishment of the Countywide Polling Place Program. Tex. Elec. Code. Sec. 43.007.

22. Under Section 43 of the Election Code, approximately 97 counties across Texas have adopted a "countywide voting program," commonly known as "Vote Centers." Tex. Elec. Code. Sec. 43.007

23. A Vote Center permits voters to cast their ballots at any polling location on Election Day, rather than being restricted to the location assigned to their specific precinct. Tex. Elec. Code. Sec. 43.007

24. For the General Election on November 5, 2024, ninety-nine of Texas' two hundred fifty-four counties are authorized to utilize the Countywide Polling Place Program. Texas Secretary of State, Counties Approved to Use the Countywide Polling Place Program, (Oct. 17, 2024), https://www.sos.state.tx.us/elections/laws/countywide-polling-place-program.shtml.

25. Harris County is approved to participate in the Countywide Polling Place Program. Texas Secretary of State, Counties Approved to Use the Countywide Polling Place Program, (Oct. 17, 2024), https://www.sos.state.tx.us/elections/laws/countywide-polling-place-program.shtml. Harris County operated and used countywide polling locations for the general election held on November 5, 2024.

26. After each election, the poll books from every Vote Center are made publicly available in accordance with Tex. Elec. Code §1.012(e).

27. After each election, the ballots cast from every voter are made publicly available in accordance with state law Tex. Elec. Code §1.012(e), which reads: "Except as provided by Subsections (f) and (g), an election record shall be available not later than the 15th day after election day in an electronic format for a fee of not more than $50."

28. The purpose of public disclosure for the poll books and ballots is to ensure auditability of the election. The number of ballots cast need to match the number of voters from each precinct, regardless of which vote center a voter used. The ballots also need to match the vote total received by each candidate regardless of where the vote was cast.

B. *Ballot Secrecy Cannot be maintained Under Current Law*

29. Due to the implementation of countywide Vote Centers, maintaining ballot secrecy has become impossible under current Texas law.

30. The voter rolls for each Vote Center are publicly accessible as required by statute and can be requested for public inspection as a means of election auditability. Tex. Elec. Code §1.012(e).

31. The individual ballots of voters are made publicly available pursuant to Tex. Elec. Code §1.012(e) and can be requested by the public for inspection after the election has been concluded as a means of election auditability.

32. By utilizing the poll books from countywide Vote Centers along with publicly available ballots of specific voters, it is possible to connect specific voters to their individual ballot to learn how they voted in that election. For example, if voter John Doe, from precinct 1 voted at vote center 1 at 2:15 on the first Tuesday of early voting, a ballot cast at 2:16 from a voter in precinct 1 at vote center 1 is easily traced back to voter John Doe. The poll books record where and when voter John Doe voted. The ballot indicates the time of the vote and precinct to which the voter belongs.

33. Consequently, the identities of voters and their ballots can be identified through publicly available records that link the ballot to the voter and the voter to the ballot

34. This issue disproportionately impacts less populated counties, small precincts, and elections with low voter turnout. Natalia Contreras, et al., Texas Officials Compromised Ballot Secrecy As They Increased Election Transparency, The Texas Tribune, (May 29, 2024), https://www.texastribune.org/2024/05/29/texas-ballot-compromised-election-security-transparency/.

35. Organizations such as Votebeat and the Texas Tribune have successfully demonstrated the ability to match certain voters to their ballots. Natalia Contreras, et al., Texas Officials Compromised Ballot Secrecy As They Increased Election Transparency, The Texas Tribune, (May 29, 2024), https://www.texastribune.org/2024/05/29/texas-ballot-compromised-election-security-transparency/.

36. While organizations like Votebeat and the Texas Tribune have already done this, it is possible for any individual to recreate the same steps through the release of publicly available information. Attached hereto and incorporated herein as if set out in full is Exhibit 1, the Affidavit of Barry Wernick, who has obtained the poll books and ballots in Harris County of the Republican and Democrat Primaries held in 2024. Mr. Wernick explains how voters' ballots are made known by this process in Harris County.

37. Because of the current Texas law requiring public disclosure, certain specific voters' ballots have already been made available to the public and have been publicly released through various news organizations.

38. In May, the news organization Current Revolt claimed to have discovered and published the ballot of the former Republican Party Texas Chair Matt Rinaldi. Tommy Oliver, EXCLUSIVE: Hacked Ballot Proves Texas Elections in CRISIS, Current Revolt, (May 22, 2024), https://www.currentrevolt.com/p/exclusive-hacked-ballot-proves-texas.

39. In June, Current Revolt published an article claiming to have the ballot of Democratic Representative Colin Allred. Current Revolt, Voter Ballot Belonging to Democrat Representative Identified, Current Revolt, (Jun 1, 2024), https://www.currentrevolt.com/p/voter-ballot-belonging-to-democrat.

40. Others have utilized the same or similar methods to locate the ballots of judges, election officials, and various notable individuals. *See* Affidavit of Barry Wernick, Attached as exhibit 1. Mr. Wernick has discerned the ballots of court of appeals justices, district court judges state senators, state representatives, congressmen and congressional candidates and, most ironically, the ballot of Texas Secretary of State Jane Nelson.

41. Current expert estimates indicate that using this analog method, around 10% of all Democratic Primary Voters and about 5% of all Republican Primary Voters' ballots may be discoverable just by using public and legally available records. For example, Mr. Wernick has ascertained the votes of over 28,000 Harris County voters.

42. Others expert reports indicate that a significantly higher percentage of ballots may not be confidential based on the algorithms used for electronic ballots. See e.g., *Pressly v. Nelson*, No. 1:24-cv-00318-DII (W.D. TX. May 20, 2024).

43. The ability to match voters to their ballots has been confirmed by conversations with several County Clerks in charge of administration of Texas' election laws.

44. Both the Texas Attorney General and Secretary of State are aware of the potential to identify voters' ballots through publicly accessible information. Christina Worrell Adkins, Election Advisory No. 2024-20, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2024-20.shtml.

45. On June 6, 2024, Christina Worrell Adkins, Director of Elections issued Election Advisory No. 2024-20. Christina Worrell Adkins, Election Advisory No. 2024-20, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2024-20.shtml.

46. Advisory No. 2024-20 addresses the issue of ballot secrecy and advises "If an election official receives a public information request for specific election records and/or ballot

10

images and the county election official determines that producing the records in their original form could compromise a voter's right to a secret ballot, the official should consider additional redactions in consultation with their county or district attorney and public information coordinator." Christina Worrell Adkins, Election Advisory No. 2024-20, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2024-20.shtml. Categories of information subject to redaction include:

    a. Location at which a voter voted on the early voting roster or any associated epollbook reports.

    b. Serial numbers and time stamps on epollbook reports

    c. Polling place identifiers such as a ballot number (either electronic or pre-printed) on the ballot image

    d. Precinct information on the ballot image

    e. Presiding judge's signature or early voting clerk's initials on the back of a ballot

    f. Information on chain of custody documents that provide location identifiers that would appear on a ballot

    g. Information on a ballot inventory form that shows what range of pre-printed ballot numbers are assigned to a given location

    h. Provisional notations on specific ballots

    i. Date a ballot was received on an Early Voting Roster

    j. The voter's name and the ballot serial number on the Register of Spoiled Ballots

Christina Worrell Adkins, Election Advisory No. 2024-20, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2024-20.shtml.

47. The advisory from the Secretary of State to redact information from poll books and ballots in response to an open records request is tantamount to an admission by the Texas Secretary of State that counties violate the voter's right to a secret ballot. In order to audit elections, Texas statutes require the information listed in paragraph 46 to be released. Without the required voter information, it is not possible to audit elections.

48. Additionally, to effectively redact this information, an election official must review that information directly. This is tantamount to an admission that county election officials possess the information necessary to learn a voter's vote.

49. Thus, even if information about the voter is redacted so that it becomes impossible for the general public to no longer able to trace ballots to individual voters due, it is still possible for election officials to trace voters to ballots and visa-versa because they have access to all of the information required to match a voter to their ballot. It is no better for the voter that violation of their secret ballot comes at the hands of the county government than the general public.

50. Harris County has not properly followed the guidance by the Secretary of State in Election Advisory No. 2024-20 and is, in fact, releasing ballots without the recommended redactions taking place.

51. On September 30, 2024, Mr. Wernick made a request for information related to Harris County voting records and on October 2, 2024, all the records from Harris County were delivered without the redactions required by Election Advisory No. 2024-20.

52. Because Harris County has not followed Election Advisory No. 2024-20, it is still possible for individuals to match a voter to their individual ballot for any of the past elections in Harry County. Nonetheless, the county election officials are able to discern a voter's ballot.

53. After this general election in November 2024, the county election officials will be required to disclose a new batch of poll books and ballots from that election.

54. A significant number of individual ballots will be discoverable either by citizens who are able to publicly inspect the election records themselves or by the county election officials who will consistently have access to all of the unredacted records related to this upcoming election.

55. Attached hereto as Exhibit 2 and incorporated herein as if set out in full is the affidavit of Rich Weible, a certified network engineer and data analyst expert with 25 years of experience. Mr. Weible can map out the randomization process to learn voters' ballots on a greater scale than by using the analog methodology. Given enough data points, Mr. Weible is able to create an algorithm to discern large number of voters' ballots.

## CAUSES OF ACTION

## COUNT 1

**(42 U.S.C. § 1983: Violation of First Amendment of the U.S. Constitution – Free Speech and Freedom of Association)**

**U.S. Const. Amend. I**

56. The Plaintiff realleges the preceding paragraphs as if fully stated herein.

57. Under color of state law, Defendants are violating the Plaintiff's constitutional right to a secret ballot.

58. Plaintiffs assert violations of the Free Speech and Free Association Clauses of the First Amendment of the United States Constitution because of the Defendants' failure to protect Texas' voters ballot secrecy.

59.　The First Amendment to the United States Constitution guarantees the right to political privacy and free speech, which includes the right to express political opinions and participate in the democratic process without fear of intimidation, coercion, bribery, or retaliation. It also protects the right of individuals to vote privately and without intimidation, thereby preserving the integrity of the electoral process.

60.　By allowing the implementation of practices that compromise the secrecy of ballots, Defendants have created an environment in which voters are at risk of being coerced or intimidated based on their voting choices by private individuals or the government. This compromises the very essence of free expression and undermines the foundational principle of democratic participation.

61.　The lack of ballot secrecy means that individuals may hesitate to vote according to their true beliefs due to fears of retribution from employers, peers or others in their community. Such an environment suppresses political privacy, free speech and limits the exercise of the right to vote, thereby infringing upon Plaintiffs' First Amendment rights.

62.　The actions and inactions of Defendants, as described herein, constitute a violation of Plaintiffs' First Amendment rights to political privacy, free speech, association, and the right to participate in elections without fear of surveillance or intimidation. Plaintiffs fear intimidation, coercion, and retaliation as a result of their votes becoming public.

## COUNT II

**(42 U.S.C. § 1983: Violation of Fourteenth Amendments of the U.S. Constitution –Equal Protection and Due Process)**

**U.S. Const. Amend. XIV**

63.　The Plaintiff realleges the preceding paragraphs as if fully stated herein.

14

64. Plaintiffs assert violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution because of the Defendants' failure to protect Texas' voters ballot secrecy.

65. The Fourteenth Amendment to the United States Constitution guarantees that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

66. The Equal Protection Clause is also violated through the unequal treatment of voters who vote at countywide election centers as opposed to those who vote on election day in their home precinct. It is more difficult to ascertain the ballot of a voter who votes in their home precinct on election day.

67. Defendants' actions, by failing to ensure the secrecy of the ballot, have effectively deprived Plaintiffs and others similarly situated of their fundamental right to vote in a manner that is private and free from intimidation, bribery, retribution, or coercion. This failure to maintain ballot secrecy undermines the procedural due process owed to every voter, as it creates an environment where individuals may be subjected to intimidation or retaliation based on their voting choice.

68. By permitting practices that compromise the secrecy of ballots, Defendants not only infringe upon the due process rights of Plaintiffs but also perpetuate systemic inequalities within the electoral process, undermining the principle of equal protection under the law.

69. Plaintiffs fear retaliation, coercion, and intimidation because of their ballots becoming public.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a preliminary injunction, a permanent injunction, and a judgment:

1. Declaring that the Plaintiffs have the right to a secret ballot under the First and Fourteenth Amendments to the United States' Constitution.

2. Declaring that Defendants are in violation of the First and Fourteenth Amendments of the U.S. Constitution in the manner of which the Defendants are conducting elections in Harris County.

3. Ordering the Defendants from making public voter identifying information from poll books and ballots.

4. Ordering the Defendants to abstain from viewing information that may lead to the discovery of a voter's ballot and from identifying to anyone a voter's vote or ballot.

5. Ordering the Defendants to pay Plaintiffs' actual damages.

6. Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 1988; and

7. Granting Plaintiffs further relief that this Court deems just and proper.

Respectfully submitted,

Attorneys for Plaintiffs,

Joseph M. Nixon Tex Bar No: 15244300
Fed Bar No: 1319
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
jnixon@publicinterestlegal.org

J. Christian Adams
Virginia Bar No: 42543
Public Interest Legal Foundation
1555 King Street, Suite 200
Alexandria, VA 22314
(703) 963-8611
adams@publicinterestlegal.org
admission pro hoc forthcoming

/s/ Joseph M. Nixon
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
jnixon@publicinterestlegal.org