**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KENNETH ZIMMERN, a Harris County Registered Voter; WILLIAM SOMMER, a Harris County Registered Voter; and CAROLINE KANE, a Harris County Registered Voter, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 4:24-cv-04439 |
| JUDGE LINA HIDALGO, in her official capacity as County Judge for Harris County, Texas; and TENESHIA HUDSPETH, in her official capacity as County Clerk for Harris County, Texas, | § § § § § § | |
| *Defendants*. | § § § | |

_____

<u>**MEMORANDUM IN SUPPORT OF
DEFENDANTS' RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………………………………………………..………ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING………..…………..1

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW…………………………1

SUMMARY OF THE ARGUMENT……………………………………………….……..2

INTRODUCTION AND BACKGROUND……………………………………………………2

ARGUMENT AND AUTHORITIES…………………………………………………...5

I.   THE COURT SHOULD GRANT DEFENDANTS' RULE 12(B)(1) MOTION BECAUSE PLAINTIFFS
     HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING SUBJECT-MATTER JURISDICTION……...5

   A.  Plaintiffs fail to show that they have standing……………………………...…………..6

       1.  Plaintiff Zimmern lacks standing……………………………………………7

           a.  Zimmern fails to plausibly allege injury-in-fact…………………...………………7

           b.  Zimmern fails to plausibly allege causation or redressability……………….………10

               i.  Zimmern does not show causation or redressability as to Judge Hidalgo…….…10

               ii. Zimmern does not show causation or redressability as to Clerk Hudspeth…….12

       2.  Plaintiff Sommer lacks standing for essentially the same reasons………………..…13

       3.  Plaintiff Kane lacks standing for essentially the same reasons………………………14

   B.  The Eleventh Amendment bars Plaintiffs' claims……………………………………15

   C.  Plaintiffs' claims are moot………………………………………………………16

   D.  Plaintiffs' claims present a non-justiciable political question…………………………...17

II.  THE COURT SHOULD GRANT DEFENDANTS' RULE 12(B)(6) MOTION BECAUSE PLAINTIFFS
     FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED………………………………17

   A.  Plaintiffs fail to state essential elements of a § 1983 claim…………………………18

   B.  Plaintiffs fail to state a First Amendment claim……………………………………21

   C.  Plaintiffs fail to state a Due Process or Equal Protection claim……………….………21

   D.  Qualified immunity bars any individual capacity claims…………………….…………22

CONCLUSION……………………………………………………………………23

i

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052 (5th Cir. 1998)………………………15

*Am. Med. Ass'n v. Bowen*, 857 F.2d 267 (5th Cir. 1988)……………………………………..16

*Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011)……………………………………..9

*Arnone v. Dallas Cnty.*, 29 F.4th 262(5th Cir. 2022)…………………………………...…19

*Aransas Project v. Shaw*, 775 F.3d 641 (5th Cir. 2014) ……………………………………… 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 6,7,8,10,18

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017)…………………………………….…………6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 18

*Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996)……………………………………………19

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992) .................................................... 6

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)……………………………………….…7

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................. 7,8,14

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ...................................... 18

*Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127 (5th Cir. 2009) ….....6

*Croft v. Governor of Tex.*, 562 F.3d 735 (5th Cir. 2009) ................................................ 6

*Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220 (Tex. App.—Dallas 2000, pet. denied) ........ 3

*Davis v. Tarrant Cnty.*, 565 F.3d 214 (5th Cir. 2009) .................................................. 20

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) …………………..... 22

*De Luna v. Hidalgo County*, No. CV M-10-268, 2011 WL 13282104 (S.D. Tex. June 24, 2011)……………………………………………………………………………………..13

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012)............................................................................................................................2,17

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357 (5th Cir. 2020)……………10

*Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) ........................... 9

*Ex parte Young*, 209 U.S. 123 (1908)……………………………….……………………...…..15

*FDIC v. Meyer*, 510 U.S. 471(1994)……………………………………………………………15

*Fisher v. Moore*, 73 F.4th 367 (5th Cir. 2023) ..................................................... 22,23

*Fulani v. Brady*, 935 F.2d 1324 (D.C. Cir. 1991) .................................................... 12

*Hall v. Dixon*, No. 4:09-cv-2611, 2010 WL 3909515 (S.D. Tex. Sept. 30, 2010) ..................... 12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011) ............................... 6

**TABLE OF AUTHORITIES (cont.)**

**Cases**                                                                                                           **Page**

*Haverkamp v. Linthicum*, 6 F.4th 662 (5th Cir. 2021) ............................................................... 1,6

*Hollingsworth v. Perry*, 570 U.S. 693 (2013)…………………………………………….……….9

*Hoyt v. City of El Paso*, 878 F. Supp. 2d 721 (W.D. Tex. 2012) ................................................ 19

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ..................................................... 15

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281 (5th Cir. 2012) ............................................................................................................................................. 6

*Johnson v. City of Houston*, 2010 WL 3909929 (S.D. Tex. Sept. 30, 2010)……………….……13

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) ................................................................... 22

*Kentucky v. Graham*, 473 U.S. 159 (1985) ....................................................................... 11,15,23

*Krueger v. Reimer*, 66 F.3d 75 (5th Cir. 1995)……………………………………….…………19

*Lance v. Coffman*, 549 U.S. 437 (2007) ....................................................................................... 8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010).............17,18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .........................................................6,8,9,10

*Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023) ..................................................................8,13

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) .............................................. 21

*McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308 (5th Cir. 2002) .......................................... 22

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) .................................................. 18,19

*Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017) ........................................................................... 17

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) ............................................. 11,13

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................................. 16

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ........................................................ 22

*Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)…………………………6

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................................................. 5

*Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244(5th Cir. 2003)………………………………19

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................................................... 7

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011)…………………17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................... 8

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................................ 18

*Tex. Democratic Party v. Abbott*, 961 F.3d 389, 398 (5th Cir. 2020)……………………….……13,17

*United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199 (1968) .......................... 16

**TABLE OF AUTHORITIES (cont.)**

**Cases**                                                                                           **Page**

*U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980)……………………………………...……16

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010)……………………………………………18,20

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)……………………………………………………………………….…9

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019)……………………………………….…18,23

*Washington v. Davis*, 426 U.S. 229 (1976)……………………………………………………...22

*Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483 (5th Cir. May 31, 2024)………………………………………………………………………………....6

*Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281 (5th Cir. 2000)……………………...…..16

**Constitutional and Statutory Provisions**

42 U.S.C. § 1983 ..................................................................................................................... 1,15

Tex. Const. art. V, § 20 ............................................................................................................ 19

Tex. Local Gov't Code § 201.003, 203.001, 203.021, 203.025…………………………..……20

Tex. Gov't Code §§ 552.011, 552.201, 552.301 ................................................................. 11,20

Texas Elec. Code §§ 1.0015, 1.012, 31.001, 31.003, 31.005, 66.001, 66.002, 66.058…3,10,11,17

U.S. Const. art. I, § 4…………………………………………………………………….…17

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 17

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Texas law requires that custodians of election records make those records available to the public for inspection following an election. Plaintiffs are three individuals who claim to be "concerned about" the possibility that "negative effects" might result from allowing such inspection to occur. They allege that it may be possible for someone to piece together information from election records and thereby infer that a particular ballot was cast by a specific voter. Plaintiffs do not plausibly allege that their own votes have been ascertained in this manner. Nonetheless, Plaintiffs assert that "the constitutional rights of voters to a secret ballot" have been compromised in violation of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. They bring this action pursuant to 42 U.S.C. § 1983 and seek monetary, declaratory, and injunctive relief. Defendants are Harris County Judge Lina Hidalgo ("Judge Hidalgo") and Harris County Clerk Teneshia Hudspeth ("Clerk Hudspeth"), both of whom Plaintiffs sue in their official capacities only. Plaintiffs filed this action on November 12, 2024. Defendants were served on November 20, 2024. Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendants ask this Court to dismiss all of Plaintiffs' claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

**I.**     To avoid dismissal under Rule 12(b)(1), Plaintiffs must establish subject-matter jurisdiction, including Article III standing. *E.g.*, *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021). The issue presented is whether Plaintiffs have met this burden, given that their claims are: based only on speculative and generalized injuries that are neither fairly traceable to Defendants nor redressable by this Court; barred by the Eleventh Amendment; moot; and non-justiciable under the political question doctrine.

1

II.     To avoid dismissal under Rule 12(b)(6), Plaintiffs' claims must be legally cognizable, and their complaint must allege sufficient well-pled facts to plausibly support those claims. *E.g.*, *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012). The issue presented is whether Plaintiffs have met this burden, given that they fail to allege essential elements of a § 1983 claim and fail to put forth legally cognizable claims under the First and Fourteenth Amendments.

## SUMMARY OF THE ARGUMENT

I.     This Court should grant Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction because Plaintiffs do not have standing. Plaintiffs' asserted injuries consist entirely of generalized grievances and speculative assertions of non-imminent future injury and are neither fairly traceable to Defendants nor redressable by this Court. Subject-matter jurisdiction is also lacking because Plaintiffs' claims are barred by the Eleventh Amendment, are moot, and present a non-justiciable political question.

II.     This Court should grant Defendants' Rule 12(b)(6) motion to dismiss because Plaintiffs have failed to state a claim upon which relief can be granted. They fail to plausibly allege essential elements of a § 1983 claim, their claims are not legally cognizable under the First and Fourteenth Amendments, and qualified immunity would bar any attempted recharacterization of their claims as individual capacity claims.

## INTRODUCTION AND BACKGROUND

As their complaint alleges, Plaintiffs Kenneth Zimmern, William Sommer, and Caroline Kane are "qualified and registered voter[s]" who are "concerned about the negative effects" of what they assert to be a "lack of secrecy regarding [their] ballots." Complaint ¶¶ 15–17. Their complaint is ultimately founded upon provisions of the Texas Election Code that require

statutorily-designated custodians of "election records" to preserve those records and to make them available to the public for inspection following an election. TEX. ELEC. CODE § 1.012 (requiring that "election records" be made available for public inspection); *id.* § 66.058 (requiring the preservation of "precinct election records"); Complaint ¶¶ 26–27. An "election record" subject to public disclosure includes "anything distributed or received by government" and any "document or paper issued or received by government" under the Election Code. TEX. ELEC. CODE § 1.012(d); *see also id.* § 66.002 (defining "precinct election records" to include "the precinct election returns, voted ballots, and other records of an election"); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 228–29 (Tex. App.—Dallas 2000, pet. denied) (concluding that "election records" are records that "memorialize the actual election and the actual conduct of the election" and include "ballot boxes (containing voted ballots), tally sheets, absentee ballots, applications for absentee ballots in person and by mail, signature rosters for election day voting, and poll lists"). Control of these records is entrusted to the "general custodian of election records," which the Election Code defines to be "the county clerk of each county . . . for an election ordered by the governor or by a county authority or for a primary election." TEX. ELEC. CODE § 66.001(1).

As Plaintiffs acknowledge, the Texas Legislature saw fit to require public access to election records so as "to ensure auditability" of elections, which in turn serves to prevent election fraud and to promote public trust in the electoral process. Complaint ¶¶ 2, 28, 47; *see also* TEX. ELEC. CODE § 1.0015 (expressing legislature's intent to "reduce the likelihood of fraud"). Plaintiffs note, for example, that making poll lists and ballots available for inspection allows the public to verify that "[t]he number of ballots cast . . . match[es] the number of voters from each precinct" and that "the vote total received by each candidate" aligns with how the ballots were actually cast. Complaint ¶ 28.

Plaintiffs nonetheless object to the public-inspection requirement as violative of "the right to a secret ballot." Complaint at 1. According to Plaintiffs, allowing public access to election records creates the *possibility* that someone will be able to infer how someone else voted. As they put it: "To audit elections, Texas' public disclosure laws make public both the poll books of voting centers and the disclosure of ballots, the combination of which make it *possible* for anybody to trace certain voters back to their actual ballot." Complaint ¶ 2 (emphasis added). Plaintiffs provide the following example: "By utilizing the poll books from countywide Vote Centers along with publicly available ballots of specific voters, *it is possible* to connect specific voters to their individual ballot to learn how they voted in that election. For example, if voter John Doe, from precinct 1 voted at vote center 1 at 2:15 on the first Tuesday of early voting, a ballot cast at 2:16 from a voter in precinct 1 at vote center 1 is easily traced back to voter John Doe. The poll books record where and when voter John Doe voted. The ballot indicates the time of the vote and precinct to which the voter belongs." Complaint ¶ 32 (emphasis added). An affidavit attached to the complaint gives a somewhat different explanation. It alleges that, by comparing a "voter roster," a "batch report by polling location," and paper ballots (or images thereof), "a state or county employee or any private person" may be able "to match ballots and ballot selections *to voters in polling locations where a voter is the only voter from a precinct to cast a ballot at a particular polling location during a particular voting period—either during Early Voting or on election day*." Wernick Aff. ¶¶ 8–9 (emphasis added).

As Plaintiffs' own allegations demonstrate, a custodian who makes election records available for public inspection does not reveal how any voters voted and therefore does not violate any voter's right to a secret ballot. It is the person who obtains the election records and then attempts to extract and match pieces of information contained in those records who takes the steps

necessary to ascertain how a voter voted. Even then, Plaintiffs admit, the election records themselves[1] merely make it "*possible* to connect" some voters to their ballots. Complaint ¶ 32 (emphasis added). To match a ballot to a particular voter, sufficiently unique circumstances surrounding when, where, and how that voter decided to cast a ballot are necessary: the voter must have been "the *only* voter from a precinct to cast a ballot at a *particular* polling location during a *particular* voting period." Wernick Aff. ¶ 9 (emphasis added).

The speculative and generalized nature of Plaintiffs' claims is confirmed by the fact that Plaintiffs do not plausibly allege that *their own* votes have been, or are capable of being, ascertained via this process of obtaining and matching up election records. Instead, they allege their injury to be their "concern[] about the negative effects" of what has just been described: the hypothetical possibility that someone might be able to piece together enough information from election records to infer how someone else voted. Complaint ¶¶ 15–17. As explained below, Plaintiffs have failed to demonstrate that they have standing to bring this suit, have failed to establish other aspects of subject-matter jurisdiction, and have failed to plausibly state any legally cognizable claim for relief. The Court must address Defendants' Rule 12(b)(1) motion before its Rule 12(b)(6) motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT AND AUTHORITIES

## I.   THE COURT SHOULD GRANT DEFENDANTS' RULE 12(B)(1) MOTION BECAUSE PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING SUBJECT-MATTER JURISDICTION.

---

[1] Plaintiffs' complaint contains inconsistencies regarding *which* election records make it possible to ascertain a voter's vote. *Compare* Complaint ¶ 32 (alleging that a poll book and ballots may be sufficient), *with* Wernick Aff. ¶¶ 8–9 (claiming that a voter roster, batch report by polling location, and ballots are necessary). The complaint is also inconsistent regarding the timeframe during which a ballot must be cast in order for it to be sufficiently unique to match to a particular voter. *Compare* Complaint ¶ 32 (indicating that a ballot must be cast within minutes of a poll book entry), *with* Wernick Aff. ¶¶ 8–9 (stating that a ballot must be uniquely identifiable among all ballots cast in one of two periods: early voting and election day).

A Rule 12(b)(1) motion should be granted when the court lacks the statutory or constitutional power to adjudicate a claim. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). Here, Plaintiffs bear the burden of demonstrating that their complaint alleges "a plausible set of facts establishing" subject-matter jurisdiction, including every element of Article III standing. *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012); *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021); *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009) ("[P]laintiffs must allege facts that give rise to a plausible claim of [their] standing."). As with a Rule 12(b)(6) motion, the plausibility standard requires that the complaint's "well-pleaded facts" support "the reasonable inference" that jurisdiction exists, not just the "sheer possibility" that it does. *Haverkamp*, 6 F.4th at 668; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024) ("A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." (quoting *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992))).

### A. Plaintiffs fail to show that they have standing.

A lack of standing requires dismissal under Rule 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). "Plaintiffs always have the burden to establish standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). To do so, Plaintiffs' complaint must allege facts that plausibly support each of the three elements of Article III standing: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs must show

6

standing "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

### 1. Plaintiff Zimmern lacks standing.

#### a. Zimmern fails to plausibly allege injury-in-fact.

Zimmern is "a qualified and registered voter in Harris County," a licensed attorney, and voted in the 2024 Republican Party primary and in the 2024 general election. Complaint ¶ 15. He alleges that he "is concerned about the negative effects of the lack of secrecy regarding his ballot and potentially facing retribution from anyone who could discover his ballot." *Id.*

Zimmern does not allege that the secrecy of *his* ballot has actually been impaired. Nor does he allege any facts plausibly indicating that the secrecy of *his* ballot is at imminent risk of impairment. *See Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (a "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury" are not sufficient (brackets and internal quotation marks omitted)). As noted above, the "lack of secrecy" that Zimmern alleges is based on the possibility that some voters' votes might be identified through publicly accessible election records. The complaint, however, is bereft of factual allegations plausibly suggesting that Zimmern cast his ballot under circumstances that make it imminently likely—or even possible—that someone else will ascertain how he voted. *See Iqbal*, 556 U.S. at 679 (plausibility requires the ability "to infer more than the mere possibility of misconduct"); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) ("injury-in-fact" requires that "the party seeking review be himself among the injured").[2]

---

[2]  Standing and the technically distinct doctrine of ripeness are ultimately based on the same constitutional limitations on federal court jurisdiction and frequently "boil down to the same question." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007). Here, the speculative and non-imminent nature of Plaintiffs' claims is best analyzed as a failure to plausibly allege "injury-in-fact."

Having failed to allege an "actual or imminent" injury directly related to the secrecy of his own ballot, Zimmern instead stakes his claim of injury on his subjective "concern[] about the negative effects" that might result from the sheer possibility that his ballot might be identified. But Zimmern alleges no facts indicating that his fear is reasonable, and fear based on an attenuated line of speculation and unfounded conjecture cannot satisfy the injury-in-fact requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (injury must be "actual or imminent, not conjectural or hypothetical" (quoting *Lujan*, 504 U.S. at 560)); *Clapper*, 568 U.S. at 416 (rejecting contention that plaintiffs had standing based on "a reasonable fear of *future* harmful government conduct" (internal quotation marks and citation omitted)).

Zimmern also fails to allege that his fear is a "concrete and particularized" injury. He does not identify any of the "negative effects" that he fears would result from his own ballot being traced back to him, and his speculation about "*potentially* facing retribution from *anyone* who *could* discover his ballot," Complaint ¶ 15 (emphasis added), must be disregarded. *See Iqbal*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" must be disregarded (alterations omitted)). Zimmern's allegations that he is an attorney and voter who—like many others—voted in 2024 primary and general elections do not show otherwise, but rather confirm that this is a generalized injury that does not affect him "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1); *Lance v. Coffman*, 549 U.S. 437, 440–42 (2007).

That Plaintiffs Sommer and Kane make the exact same threadbare allegations, Complaint ¶¶ 16–17, and that any voter could do the same, demonstrates that Zimmern's allegation of fear-based harm "is precisely the kind of undifferentiated, generalized grievance" that cannot support a claim of standing. *Lance*, 549 U.S. at 442; *see also Lutostanski v. Brown*, 88 F.4th 582, 586–87

(5th Cir. 2023) (applying the generalized-grievance bar to hold that a group of voters did not have standing to sue county officials for alleged unlawful use of an uncertified electronic voting system); *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449, at *2 (5th Cir. Apr. 3, 2024); *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 15 (Tex. 2011). So too does the generalized manner in which he frames his various claims and requested relief. Complaint ¶ 66 (alleging "unequal treatment of voters" based on when and where they vote, but not alleging that he is in the purportedly disadvantaged group); *id.* ¶ 67 (alleging that Defendants have failed to ensure "the secrecy of the ballot" and have thereby "effectively deprived Plaintiffs and others similarly situated" of rights "owed to every voter," but not alleging any facts indicating that Zimmern's own rights have been violated); *id.* at 16 (asking the Court to broadly order Defendants "to abstain from viewing information that may lead to the discovery of a voter's ballot and from identifying to anyone a voter's vote or ballot").

Because Zimmern "rais[es] only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seek[s] relief that no more directly and tangibly benefits him than it does the public at large," he fails to establish standing. *Lujan*, 504 U.S. at 573–74; *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013) (A "'generalized grievance'—no matter how sincere—is insufficient to confer standing."). Zimmern maintains that the Constitution has been violated, but he "fail[s] to identify any personal injury" that he has actually suffered or is imminently likely to suffer "*as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) (emphasis in original). Claiming that "the Constitution has been violated" and "nothing

else" is "not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Id.* at 485–86.

### b. Zimmern fails to plausibly allege causation or redressability.

To establish standing, Zimmern must also plausibly allege causation and redressability as to each Defendant. Causation—or traceability—requires that the asserted injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61. This requires "more than conjecture." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020). To establish redressability, Zimmern must show that it is "likely," as opposed to "speculative," that his injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560– 61 (citation omitted); *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).

### i. Zimmern does not show causation or redressability as to Judge Hidalgo.

Zimmern's only allegation pertaining to Judge Hidalgo is that she, in her official capacity as Harris County Judge, "is charged with the administration of federal and state election laws, including overseeing the election process within the county and ensuring compliance with state laws and regulations." Complaint ¶ 18. These are unsupported, conclusory legal assertions that "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. They are also wrong as a matter of law. Zimmern's claims are based entirely on actions allegedly taken by Defendants as custodians of election records. Texas law, however, unequivocally makes the county clerk the custodian of election records in this case. TEX. ELEC. CODE § 66.001(1) ("The general custodian of election records is . . . the county clerk of each county . . . for an election ordered by the governor or by a county authority or for a primary election.").

Moreover, to the extent that the county clerk's custodial duties are subject to oversight, Texas law gives that authority, not to Judge Hidalgo, but to the Texas Secretary of State and the Texas Attorney General. TEX. ELEC. CODE §§ 31.001, 31.003, 31.005 (designating the Secretary of State as the "chief election officer of the state"; directing her to "obtain and maintain uniformity in the application, operation, and interpretation of [the Texas Election] [C]ode and of the election laws outside this code"; and empowering her to "take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes"); TEX. GOV'T CODE § 552.011 ("The attorney general shall maintain uniformity in the application, operation, and interpretation of [Texas Government Code Ch. 552, relating to Public Information]. To perform this duty, the attorney general may prepare, distribute, and publish any materials, including detailed and comprehensive written decisions and opinions, that relate to or are based on this chapter [Government Code Ch. 552]"); *id.* § 552.301 (requiring Texas governmental entities to request a ruling from the Attorney General prior to withholding any information responsive to an open records request); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (alleged violation of Voting Rights Act was, "without question," fairly traceable to the Secretary of State because she serves as the "chief election officer of the state" and is responsible for maintaining uniformity in state election laws).

In addition, because Zimmern sues Judge Hidalgo in her official capacity, his claims against her are, in effect, claims against Harris County itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" of which the official is an agent). But Zimmern alleges nothing to suggest that his injuries are fairly traceable to Harris County: he identifies no actions that the county or its governing body—the Harris County Commissioners Court (of which Judge Hidalgo is just one of

11

five voting members)—have taken to cause his alleged injury. And without that showing, he also fails to demonstrate that any decision against Harris County would redress his injury.

### ii. Zimmern does not show causation or redressability as to Clerk Hudspeth.

With respect to Clerk Hudspeth, Zimmern's asserted injury lies in his fear that he will experience "negative effects" and "retribution" based on the sheer possibility that she will release election records containing information from which a member of the general public might ascertain how he voted. Nowhere does Zimmern plausibly allege that Clerk Hudspeth (or her employees) will *sua sponte* parse information contained in various election records in order to ascertain how Zimmern voted, or that she will then publicize how Zimmern voted or exact retribution against him for how he voted. Any supposition that Clerk Hudspeth would do so is not just factually unsupported but barred because "[c]ourts do not presume the government will break the law." *Hall v. Dixon*, No. 4:09-cv-2611, 2010 WL 3909515, at *12 (S.D. Tex. Sept. 30, 2010), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012). Zimmern's conjecture that a member of the public might do these things does not establish that the resultant injury would be "fairly traceable" to Clerk Hudspeth. On the contrary, in those circumstances, traceability and redressability are precluded because the operative cause lies in "the independent action of some third party not before the court." *See Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) ("[A]n injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors.").

Moreover, insofar as Zimmern alleges injury because of the sheer existence of election records containing certain information, or because those records must be made available for public inspection under the Election Code, or because the redaction process triggered by a public information request might entail internal review of such records by government employees, his

injury is traceable, not to Clerk Hudspeth, but to Texas state law[3] and to the state officers charged with overseeing the implementation of those laws: the Secretary of State and the Attorney General. *See OCA-Greater Houston*, 867 F.3d at 613–14; *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399–400 (5th Cir. 2020) (indicating that even though "Texas's vote-by-mail statutes are administered, at least in in the first instance, by local election officials," claims were traceable to the Texas Secretary of State).[4]

\*  \*  \*

For all these reasons, Zimmern fails to show standing to pursue any of his claims or to obtain any of the relief he seeks, whether monetary, injunctive, or declaratory. *Lutostanski v. Brown*, 88 F.4th at 586–87.

### 2. Plaintiff Sommer lacks standing for essentially the same reasons.

Sommer's allegations are nearly identical to Zimmern's and thus fail to establish his own standing. Complaint ¶ 16. Sommer's additional allegations—that he voted early in the 2024 general election and that he is a Harris County election clerk—do not change the nature of his

---

[3]  This point is confirmed by Plaintiffs' request for relief, which asks this Court to, among other things, order Defendants: (1) to "abstain from viewing information that may lead to the discovery of a voter's ballot"; and (2) not to "mak[e] public voter identifying information from poll books and ballots." Complaint at 16. Determination of whether to redact information in an election record because it could lead to the discovery of a voter's ballot requires that said information first be viewed by the custodian. The only alternative is for the custodian to flatly refuse to allow public inspection of all election records, in contravention of state law.

[4]  In the event that the Court determines that Plaintiffs have standing to pursue their claims against Clerk Hudspeth, that would provide yet another reason for dismissing all claims against Judge Hidalgo. The claims against Clerk Hudspeth would then be entirely duplicative of the claims against Judge Hidalgo, and Judge Hidalgo's "presence in this suit [would be] unnecessary." *De Luna v. Hidalgo County*, No. CV M-10-268, 2011 WL 13282104, at *2–4 (S.D. Tex. June 24, 2011); *Johnson v. City of Houston*, 2010 WL 3909929, at *6 (S.D. Tex. Sept. 30, 2010) (section 1983 official-capacity claims against police chief dismissed pursuant to Rule 12(b)(6) motion because city also named as defendant).

injury. Unlike Zimmern, Sommer alleges that "[h]e did not vote in the 2024 primary election out of fear that his ballot from the primary election would be exposed." *Id*. But plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Sommer does not even aver that the fear that drove him not to vote in the primary (but which apparently disappeared by the time of the general election) resulted from anything Defendants did; his fear could well have been the result of his beliefs about other aspects of the voting process. In any case, Sommer's unsupported and speculation-based fear is not "fairly traceable" to Defendants or redressable via money damages or injunctive or declaratory relief.

### 3. Plaintiff Kane lacks standing for essentially the same reasons.

Plaintiff Kane's allegations are largely identical to those made by Zimmern and Sommer, and thus fail for the same reasons. Complaint ¶ 17. That Kane was a candidate for the U.S. House of Representatives does not alter the analysis because she fails to allege any injury particularly linked to her candidacy. Unlike Zimmern and Sommer, Kane alleges that she "voted in the 2024 Republican Primary and has had her ballot disclosed and made public." *Id*. But she does not allege that her ballot has been, or can be, traced back to her using only publicly available election records, and as the complaint makes clear, a ballot by itself does not disclose a voter's identity.[5] The mere fact that Kane's *ballot* was "disclosed"—perhaps pursuant to a request by a member of the public to inspect all ballots cast in the Republican primary, or perhaps by other means not even tied to a

---

[5] Though not mentioned in the complaint itself, the Wernick affidavit lists Kane as one of a group of "voters whose ballots [Wernick] ha[s] identified as not secret" from the 2024 elections. Wernick Aff. ¶ 37(c). But Wernick does not explain how he identified Kane's ballot "as not secret." Elsewhere, he states that he requested and obtained cast vote record images from Harris County, *id.* ¶ 24, but his own affidavit states that further information is necessary to connect a ballot to a particular voter, *id.* ¶ 8.

public records request—does not suffice to render her claim of standing plausible. Kane does not allege that the disclosure of her ballot has resulted in any harm to her, or that it resulted from Defendants' actions, and so she fails to show traceability or redressability. She also fails to show redressability with respect to her requests for prospective relief: such relief would not remedy the disclosure of her ballot, which has already occurred, and "a single instance of past harm cannot support a claim in federal court for forward-looking injunctive relief." *Lutostanski*, 88 F.4th at 587.

**B. The Eleventh Amendment bars Plaintiffs' claims.**

The Eleventh Amendment generally bars private citizens from suing a state in federal court. *E.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Since *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court has recognized an exception to this rule "for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities." *Coeur d'Alene*, 521 U.S. at 269. Here, Plaintiffs sue Defendants in their official capacities only, and they seek monetary damages as well as declaratory and injunctive relief. Moreover, Plaintiffs neither assert, nor attempt to allege the facts necessary to support, an *Ex parte Young* action against either Defendant. Instead, they bring their claims under 42 U.S.C. § 1983, which does not abrogate the states' Eleventh Amendment immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). There is no contention that Texas has waived this immunity.

As explained above, Plaintiffs fail to establish any connection at all between their claims and Judge Hidalgo, so dismissal of the claims against her is appropriate without even reaching the Eleventh Amendment issue. As for Clerk Hudspeth, Plaintiffs' allegations are based entirely on

her duties as the statutorily-designated custodian of election records for the 2024 primary and general elections. As explained above, those duties were imposed upon her by state law enacted by the state legislature, and are subject to oversight by state officials—the Texas Secretary of State and the Texas Attorney General. Because the relief Plaintiffs seek in the case would necessarily "interfere with the [state's] public administration" of the Texas Election Code, their claims against Clerk Hudspeth are claims against the state itself. *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 286 (5th Cir. 2000) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)). Accordingly, all of Plaintiffs' claims—for injunctive, declaratory, and monetary relief— are barred by the Eleventh Amendment and are not within this Court's subject-matter jurisdiction.

### C. Plaintiffs' claims are moot.

A claim is moot, and thus not within a federal court's subject-matter jurisdiction, when "the issues presented are no longer 'live,' or the parties lack a legally recognizable interest in the outcome.'" *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980) (citations omitted). A claim can be rendered moot if it "has been resolved or if it has evanesced because of changed circumstances," *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citations omitted), or "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).

Kane is the only Plaintiff who alleges that her ballot was actually disclosed. Even if Kane had standing based on that allegation, the fact that her ballot for a past election has already been made public makes her claims for injunctive and declaratory relief moot. She has made no allegations suggesting that any such disclosure would recur, or that such recurrence would be

attributable to Defendants, and in asserting mootness, Defendants are granted "a presumption of good faith because they are public servants." *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017).

    **D. Plaintiffs' claims present a non-justiciable political question.**

A case that presents a political question is non-justiciable and therefore not within this Court's subject-matter jurisdiction. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011). "At its core, the political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution" to others. *Id.* (internal quotation marks and citations omitted). Here, the Constitution's Elections Clause commits the determination of the time, place, and manner of conducting elections to the States, U.S. CONST. art. I, § 4, and the Texas Legislature has exercised that authority by requiring that election records be made available for public inspection. In doing so, the state balanced multiple competing considerations, including the need to "reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted." TEX. ELEC. CODE § 1.0015. Resolution of Plaintiffs' claims would require this Court to second-guess the wisdom of that complex policy judgment, which is not an appropriate function of a federal court. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 398 (5th Cir. 2020) (suggesting that the decision "whether to use electronic voting machines or paper ballots" is a non-justiciable challenge to "the wisdom of [a state's] policy choices").

**II. THE COURT SHOULD GRANT DEFENDANTS' RULE 12(B)(6) MOTION BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

To survive a Rule 12(b)(6) motion, the complaint must, on its face, state a claim for relief that is both "legally cognizable" and "plausible" based on the facts alleged. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (quoting *Lone*

*Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *Iqbal*, 556 U.S. at 678. Assessing a claim's plausibility "involves a two-step inquiry." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). The court must first sift the complaint's "well-pleaded factual content" from its "unsupported legal conclusions," "mere conclusory allegations," and "unwarranted deductions of fact." *Id.*; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Then, the court must determine whether the well-pleaded facts, taken as true, "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679, which they do only if they "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a Rule 12(b)(6) motion, a court is generally limited to considering "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint," as well as "matters of which a court may take judicial notice." *Lone Star Fund*, 594 F.3d at 387; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### A. Plaintiffs fail to state essential elements of a § 1983 claim.

Because Plaintiffs bring their § 1983 claims against Defendants in their official capacities, they must be treated as claims against the government entity for whom Defendants serve as officers. Assuming the Court does not dismiss the claims on any of the grounds already given, the only government entity subject to suit under § 1983 that Plaintiffs can be understood as suing is Harris County. To establish municipal liability against Harris County under § 1983, Plaintiffs must allege sufficient facts to plausibly show: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks and citations omitted)); *Monell v. Department of*

*Social Servs. of the City of New York,* 436 U.S. 658, 694 (1978); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995).

Plaintiffs fail to establish any of these elements. As explained further below, Plaintiffs fail to allege any deprivation of a constitutional right. In addition, their complaint fails to plausibly allege that either Judge Hidalgo or Clerk Hudspeth acted as a "final policymaker" for Harris County. As explained above, Plaintiffs' conclusory legal assertion that Judge Hidalgo has authority over any of the matters at issue in this suit is demonstrably wrong under Texas law. Plaintiffs have failed to allege any policy attributable to her, let alone that she is the relevant policymaker. *See Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) ("State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity."); *Hoyt v. City of El Paso*, 878 F. Supp. 2d 721, 743 (W.D. Tex. 2012) ("Simply stating that [a municipality] has enforcement power does not make it so.").

Plaintiffs' claims against Clerk Hudspeth are also unsupported by any allegations showing a policy attributable to Harris County or that Clerk Hudspeth was the relevant maker of such a policy. As explained above, Clerk Hudspeth's duties relating to election records are entirely a product of state law and are overseen by state officials. Furthermore, the office of county clerk is created by the Texas Constitution—not by Harris County—and the Constitution provides that the "duties, perquisites and fees of [that] office shall be prescribed by the Legislature." TEX. CONST. art. V, § 20; *Arnone v. Dallas Cnty.*, 29 F.4th 262, 268–69 (5th Cir. 2022) (concluding that the Dallas County district attorney acted as a state—not county—policymaker because the Texas Constitution "provides the Legislature—a state entity—with a direct role in regulating both the scope of [that position's] duties and compensation," and because "Texas statutory law also points towards the district attorney having acted on the state's behalf"). Plaintiffs allege nothing to

19

indicate that Clerk Hudspeth undertook any action on behalf of Harris County in this case, let alone action rising to the level of an official policy.[6]

Plaintiffs also fail to allege that any violations of their constitutional rights were *caused by* a Harris County policy. To satisfy § 1983's causation requirement, the policy at issue must be the "moving force" behind the violation. This requires Plaintiffs to show "that the municipal action was taken with the requisite degree of culpability" and that there was a "direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (citation omitted). Plaintiffs "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'" *Id.* (citation omitted). Here, there is no *direct* causal link between Clerk Hudspeth's duty to release election records for public inspection and a private individual's decision to use those records to ascertain how a voter voted. Nor do Plaintiffs allege anything to support an inference of "deliberate indifference." *See also Davis v. Tarrant Cnty.*, 565 F.3d 214, 227 (5th Cir. 2009) ("[T]he unconstitutional conduct must be directly attributable to the

---

[6] By way of contrast to the treatment of election records under the Election Code, Texas law makes elected officials the custodians and records management officers for records in their own offices. *See* TEX. LOCAL GOV'T CODE §§ 201.003(2) ("'Custodian' means the appointed or elected public officer who by the state constitution, state law, ordinance, or administrative policy is in charge of an office that creates or receives local government records"); 201.003(14) ("'Records management officer' means the person identified under Section 203.001 …"); 203.001 (an "elected county officer is the records management officer for the records of the officer's office"); *see also* TEX. GOV'T CODE § 552.201(b) ("Each elected county officer is the officer for public information and the custodian, as defined by Section 201.003, Local Government Code, of the information created or received by that county officer's office"). For nonelected offices, the Harris County Commissioners Court, as a governing body, may designate a custodian or records management officer. *See* TEX. LOCAL GOV'T CODE §§ 203.021 and 203.025.

municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." (internal quotation marks omitted)).

**B. Plaintiffs fail to state a First Amendment claim.**

Plaintiffs allege that Defendants' "failure to protect Texas' voters['] ballot secrecy" violates the First Amendment. Plaintiffs do not contend that the First Amendment requires perfect and absolute secrecy of the ballot, regardless of other compelling state interests such as prevention of election fraud, promotion of public confidence in election results, and general governmental transparency. Rather, they assert that Defendants have violated the First Amendment because they "have created an environment in which voters are at risk of being coerced or intimidated based on their voting choices by private individuals or the government." Complaint ¶ 60. But the First Amendment "prohibits only *governmental* abridgment of speech," not "*private* abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (emphasis in original). To the extent Plaintiffs seek to advance a "state-created danger" theory under the cover of a First Amendment claim, their theory falls within the scope of the Fourteenth Amendment and fails for the reasons described below. And to the extent Plaintiffs assert that Defendants have created an environment in which "the government" will coerce or intimidate voters, they must bring a claim against the governmental coercion or intimidation itself to set forth a First Amendment claim.

**C. Plaintiffs fail to state a Due Process or Equal Protection claim.**

Plaintiffs allege that Defendants violated their "procedural due process" rights under the Fourteenth Amendment "by failing to ensure the secrecy of the ballot," thereby "creat[ing] an environment where individuals may be subjected to intimidation or retaliation" at the hands of others. Complaint ¶ 67. But "[t]he Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors."

*McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). Moreover, the Fifth Circuit "has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule." *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023). And Plaintiffs fail to demonstrate any constitutionally-protected federal or state right that could form the basis of their due process claim.

Plaintiffs allege that the Equal Protection Clause is violated "through the unequal treatment of voters who vote at countywide election centers as opposed to those who vote on election day in their home precinct." Complaint ¶ 66. But Plaintiffs allege nothing to indicate the "purposeful discrimination" necessary to establish a disparate treatment claim. *Johnson v. Rodriguez*, 110 F.3d 299, 306–07 (5th Cir. 1997) (to make out an Equal Protection claim, a plaintiff must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury; this "implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group"). Plaintiffs' assertion that "[i]t is more difficult to ascertain the ballot of a voter who votes in their home precinct on election day," and that this "perpetuate[s] systemic inequalities within the electoral process" suggests a disparate impact theory, but such a claim is not viable under the Equal Protection Clause. *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272, (1979); *Washington v. Davis*, 426 U.S. 229, 239 (1976) (Equal Protection Clause does not prohibit the government from taking actions which have an unintentional disparate impact); *Johnson*, 110 F.3d at 306–07 ("The Supreme Court has instructed us time and again . . . that disparate impact alone cannot suffice to state an Equal Protection violation").

**D.  Qualified immunity bars any individual capacity claims.**

Plaintiffs clearly specify that they are suing Defendants in their official capacities only: they say so in the caption of their complaint and they unequivocally state that each Defendant "is sued in her official capacity." Complaint ¶¶ 18–19. This Court therefore need not consider whether Plaintiffs have stated any individual-capacity claims against Defendants, and should reject any attempt by Plaintiffs to recharacterize their claims as such. *See Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) (indicating that *if* the complaint does not "clearly specify" the capacity in which officials are sued, *then* a court may rely on the subsequent course of proceedings to clarify the matter). Even if Plaintiffs did seek to assert such claims against Defendants, they would be barred by qualified immunity: Plaintiffs fail to show that Defendants infringed any constitutional right of theirs, and thus they cannot show that their right "was 'clearly established' at the time of the challenged conduct." *Fisher*, 73 F.4th at 371 (internal quotation marks omitted); *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) ("When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018))).

## CONCLUSION

For these reasons, the Court should grant Defendants' motion and dismiss all claims against Defendants.


Dated: December 11, 2024                    Respectfully submitted,


**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G.C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST ASSISTANT

23

**TIFFANY S. BINGHAM**
MANAGING COUNSEL,
AFFIRMATIVE & SPECIAL LITIGATION DIVISION

*/s/ Edward D. Swidriski III*
**EDWARD D. SWIDRISKI III**
***Attorney-in-Charge***
Assistant County Attorney
Texas Bar No. 24083929
SDTX Fed. Bar No. 3089960
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924
Edward.Swidriski@harriscountytx.gov

**CHRISTOPHER GARZA**
Deputy Division Director
Texas Bar No. 24078543
SDTX Fed. Bar No. 1670532
Christopher.Garza@harriscountytx.gov

**NINA L. M. OISHI**
Assistant County Attorney
Texas Bar No. 24142250
Nina.Oishi@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

**ATTORNEYS FOR DEFENDANTS**

24