United States District Court
Southern District of Texas

**ENTERED**
March 13, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KENNETH ZIMMERN, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-24-4439 |
| | § | |
| LINA HIDALGO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiffs, three registered voters in Harris County, Texas, allege that Harris County's voting system makes it possible for government officials or members of the public to determine how an individual voted in certain circumstances. (Docket Entry No. 33). They allege that this violates a constitutional right to a secret ballot. (*Id.*). They ask this court to order Harris County to change the way the voters can vote, by, for example, assigning voters to particular voting centers or "curtailing" the use of countywide vote centers, which they assert would eliminate the possibility that how an individual voted could be discovered. (Docket Entry No. 49). They seek this relief despite the fact that Harris County's voting system is permitted under state law and that state law also requires that Harris County collect and make public certain ballot information to ensure election integrity. TEX. ELEC. CODE § 43.007(e); *Id.* § 1.012; *Id.* 1.0015.

Before reaching the merits of their claims, however, the court must determine that at least one plaintiff has standing for the injunctive and declaratory relief sought. Because none of the plaintiffs has standing, the court grants the motion to dismiss. (Docket Entry No. 41). The plaintiffs' motion for summary judgment, (Docket Entry No. 35), and the defendants' motion to strike, (Docket Entry No. 39), are denied as moot. The reasons for this ruling are explained below.

## I.      Background

Kenneth Zimmern, William Sommer, and Caroline Kane are registered voters in Harris County.  (Docket Entry No. 33 ¶ 20–22).  They allege that by cross-referencing various publicly available records from electronic poll books, voter rosters, ballot images, and cast-vote records, government officials and members of the public can figure out how a limited number of individual voters cast their votes.  (*Id.* ¶¶ 46, 59).  Kane alleges generally in her complaint that her 2024 Republican primary ballot was "made public," (*Id.* ¶ 22), although she clarifies in her responses to the defendants' interrogatories that the only person who has told her that her ballot was discovered was Barry Wernick, who has provided an affidavit in this case purportedly explaining his method of discovering votes.  (Docket Entry No. 41-3 at 9; Docket Entry No. 33-1).[1]  She does not allege that any of her other ballots were discovered.  (Docket Entry No. 33 ¶ 22).  Zimmern and Sommer do not allege that any of their ballots have been discovered.  (*Id.* ¶¶ 20–21).  Sommer alleges that he did not vote in the 2024 primary election out of fear his vote would be exposed, although he apparently overcame his fear and voted in the 2024 general election.  (*Id.* ¶ 21).

The plaintiffs sue under 42 U.S.C. § 1983, alleging that Harris County's voting system violates their First and Fourteenth Amendment rights.  (*Id.* ¶ 79–92).  The defendants are Judge Lina Hidalgo, in her official capacity as County Judge for Harris County, and Teneshia Hudspeth, in her official capacity as County Clerk for Harris County.  (*Id.* ¶¶ 23, 24).  The plaintiffs ask for a variety of injunctive relief and declaratory relief.  (*Id.* at 20–22).  The defendants moved to dismiss the original complaint, arguing as a threshold matter that none of the plaintiffs has standing

---

[1] Although it is ultimately immaterial to the resolution of the motions before the court, the court also notes that the amended complaint asserts that the disclosure of Kane's "primary ballot was made an issue in her campaign" for the House of Representatives that election cycle.  (Docket Entry No. 33 ¶ 22).  In her responses to the interrogatories, however, she asserts that she "does not know" who else besides Wernick may have viewed her ballot and that she only became aware that Wernick had allegedly viewed it on November 11, 2024.  (Docket Entry No. 41-3 at 9).

to seek injunctive and declaratory relief because (among other things) none of them has pleaded facts showing that the secrecy of their ballots was at "imminent risk of impairment" and instead have articulated only "generalized grievance[s]." (Docket Entry No. 8-1 at 12, 13). The plaintiffs responded, arguing that they have standing because "they have suffered individualized concrete injuries that are directly attributable to Defendants' conduct." (Docket Entry No. 11 at 12).

At a pre-motion conference on February 28, 2025, the court allowed the plaintiffs to amend their complaint by April 15, 2025, because the arguments they raised in the conference differed from the claims alleged in their original complaint. (Docket Entry No. 32). The court allowed each party to serve 10 interrogatories on the other side. (*Id.*). On April 14, 2025, the plaintiffs filed their amended complaint. (Docket Entry No. 33). On July 10, 2025, the plaintiffs moved for summary judgment, alleging that it is "undisputed" that Harris County's voting system violates their constitutional rights. (Docket Entry No. 35 at 2). In their amended reply to the response to the motion for summary judgment, the plaintiffs also attached new evidence, (Docket Entry Nos. 38, 38-2, 38-3, and 38-4), which the defendants moved to strike, (Docket Entry No. 39).

On October 31, 2025, the defendants moved to dismiss, for judgment on the pleadings, and in the alternative for summary judgment, raising many of the same arguments—including the standing arguments—raised in their prior motion to dismiss. (Docket Entry No. 41). They attached the plaintiffs' affidavits to their motion and cite to the evidence the plaintiffs submitted in support of their motion for summary judgment. (Docket Entry No. 41-3; *see, e.g.*, Docket Entry No. 41-1 at 12). The plaintiffs responded. (Docket Entry No. 43). Both sides have incorporated their prior briefing into the current motion to dismiss and response. (Docket Entry No. 41-1 at 10; Docket Entry No. 43 at 3). In their response, the plaintiffs incorporated by reference the evidence

3

and affidavits attached to their other pleadings and motions, including the motion for summary judgment.  (Docket Entry No. 43 at 2).

## II.    The Legal Standard

### A.  The Rule 12(b)(1) Standard

Rule 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.2d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  "The court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *In re FEMA*, 668 F.2d at 286.

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citation omitted); see also *Clark v. Tarrant Cnty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986).  The court may consider matters outside

4

the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction. *Garcia*, 104 F.3d at 1261.

**B. The Summary Judgment Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

## III.   Analysis

### A.   Standing

"Federal courts have jurisdiction only over 'cases' or 'controversies.'" *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997). If a party lacks standing to sue, "[t]here is no case or controversy." *Id.* Because standing is necessary for subject-matter jurisdiction, it "is a threshold issue that [the court] consider[s] before examining the merits." *Id.* Three elements are required:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or

6

imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). "Plaintiffs always have the burden to establish standing."  *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Lujan*, 504 U.S. at 561).  They must meet this burden "with the manner and degree of evidence required at the successive stages of the litigation."  *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009).

When a complaint seeks multiple kinds of relief, the plaintiff must show standing "for each type of relief sought."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)).  "Requests for injunctive and declaratory relief implicate the intersection of redressability and injury-in-fact requirements."  *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).  "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries."  *Id.*  "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened injury."  *Id.* (quoting *Lyons*, 461 U.S. at 105).

"That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact."  *Id.*  The threatened future injury must be "potentially suffered by the plaintiff, not someone else."  *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)).  "The purpose of the requirement that the injury be 'imminent' is 'to ensure that the alleged injury is not too speculative for Article III purposes.'"  *Id.* at 721 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  "For a threatened future injury to satisfy the

7

imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.*

(quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Standing "does not follow from the conclusion that the injunctive relief sought by a plaintiff would prevent suffering the same injury in the future, which is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past." *Id.* Rather, plaintiffs "must also show that there is a substantial risk that they will suffer the potential future injury absent their requested relief." *Id.* "Past wrongs are relevant to 'whether there is a real and immediate threat of repeated injury,' but alone they may be insufficient to establish standing for prospective relief." *Attala County, Mississippi Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 4996 (1974)).

### C. The Motion to Dismiss, For Judgment on the Pleadings, Or in the Alternative, For Summary Judgment

The plaintiffs seek declaratory and injunctive relief.[2] They ask this court to order Harris County to change the way it handles voting and to stop collecting and publishing certain voter information, despite state laws allowing Harris County to conduct its elections in this manner and requiring the collection of information to ensure the audibility of elections. Following the plaintiffs' motion for summary judgment, the defendants have moved to dismiss, arguing—among

---

[2] The first amended complaint is entitled "Plaintiffs' First Amended Complaint and Request for Declaratory Judgment and Injunctive Relief." (Docket Entry No. 33). The plaintiffs repeatedly assert that they are seeking only declaratory and injunctive relief. (*See, e.g.*, Docket Entry No. 35 at 12 (framing the issue as "[w]hether Plaintiffs are entitled to declaratory and injunctive relief under 42 U.S.C. § 1983 to remedy and prevent the ongoing constitutional violations caused by the challenged voting system"); Docket Entry No. 43 at 16 ("Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 to address these ongoing constitutional violations")). The identified "ongoing" violation is Harris County's plan to use countywide polling locations through at least 2026. (Docket Entry No. 43 at 28). At the motion hearing on January 15, 2026, the court asked the plaintiffs to clarify the specific relief they were seeking, and the plaintiffs identified only declaratory and injunctive relief, including its preferred solution, which would be to "assign voters . . . to a vote center or to, in some fashion, limit or curtain the use of countywide vote centers." (Docket Entry No. 49). To the extent that the amended complaint appears to inadvertently still include a request for actual damages, (Docket Entry No. 33 at 21), the plaintiffs have abandoned that relief.

other things—that none of the plaintiffs have standing because they have not sufficiently alleged or shown that they face a "substantial risk" of having their votes ascertained in the future, as is required for the declaratory and injunctive relief they seek. (Docket Entry No. 41-1 at 5, 16 (citing *Clapper*, 568 U.S. at 409).[3]

The court agrees that none of the plaintiffs has standing for the injunctive and declaratory relief they seek because they have not shown a "credible threat" or "substantial risk" either that Harris County will collect individually identifiable information about how they voted in a particular election in the future or that a third party will use that information to ascertain their vote. The plaintiffs appear to argue that both the collection of information that could be used to learn how they voted and the possibility that someone will use that collected information to learn how they voted violate their constitutional right to a secret ballot. (*See, e.g.*, Docket Entry No. 43 at 18 ("In addition to the County's collection and maintenance of identifiable voter information, Zimmern's injury arises from the credible threat that his voting choices could be publicly disclosed due to Defendants' inadequate safeguards for ballot secrecy.")).

At the pre-motion conference in February 2025, the court allowed each side to serve interrogatories to clarify the bases for the alleged violations and obtain accurate information on the defendants' collection of voting data. (Docket Entry No. 32). The defendants' interrogatories

---

[3] There is unclear historical support for the constitutional right to a secret ballot. *See, e.g.*, *John Doe No. 1 v. Reed*, 561 U.S. 186, 224 (2010) (Scalia, J., concurring) (explaining that voting was public in the United States until 1888); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (discussing the secret ballot and the "hard-won right" to vote without fear of retaliation). But it makes no difference to the court's standing analysis whether the federal Constitutional actually affords a right to a secret ballot. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." (quotation marks and quoting reference omitted)). This court will assume, for purposes of this standing analysis, that it does. *See Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019) (assuming, for the purposes of determining Article III standing, that Texas was correct on the merits of its claim under the Administrative Procedure Act).

asked each plaintiff to "[s]tate every material fact supporting each Plaintiff's Article III standing to bring his/her claims against each Defendant." (Docket Entry No. 41-3 at 3, 5, 7). The plaintiffs responded that they "rely on all the facts pleaded in the Amended Complaint and all the facts in the affidavits by Barry Wernick, Rick Weible, and each Plaintiff," noting their concern about the potential lack of ballot secrecy and pointing out that Wernick had told Kane that he had discovered her completed ballot for the 2024 Republican primary. (*See generally* Docket Entry No. 41-3). The defendants attach these interrogatory responses to their motion to dismiss and argue that the plaintiffs have failed to support the general allegations of future harm contained in the amended complaint with evidence showing that they are at risk of having their own vote ascertained. (Docket Entry No. 41-1 at 11–12; Docket Entry No. 41-3).

The Wernick affidavit attached to the amended complaint and the motion for summary judgment, and cited by the plaintiffs in their affidavits, is irrelevant in part and insufficiently specific in other parts. Wernick states in his affidavit that information collected in counties that have chosen to adopt the Countywide Polling Place Program (the same program that Harris County has opted into) "allows for a state or county employee or any private person to match ballots and ballot selections to voters in polling locations where a voter is the only voter from a precinct to cast a ballot at a particular polling location during a particular voting period—either during Early Voting or on election day." (Docket Entry No. 33-1 ¶ 9). Although Wernick alleges that he was able to match 28,608 Harris County March 2024 primary voters to their ballots, he does not explain his methodology. (*Id.* ¶ 28). Nor does he explain how he was able to identify which was Kane's ballot so he could tell how she voted.[4] (*Id.* ¶ 40). And most of his affidavit concerns his personal

---

[4] In their amended reply to the motion for summary judgment, the plaintiffs attached a new Wernick affidavit purportedly explaining his methodology, which the defendants have moved to strike. (Docket

experiences with a recount in Dallas County, which does not directly shed light on whether it is likely that the three Harris County plaintiffs are substantially at risk of having their specific ballots identified to reveal who they voted for in a future election.  (*See, e.g.*, *id.* ¶¶ 2–10).

Weible's affidavit—which was also attached to the amended complaint and the plaintiffs' motion for summary judgment—is speculative.  He asserts that it is possible to determine a Harris County voter's vote both because (1) it is possible to determine a person's vote when that person is a "unique vote[r] in a vote center" (seemingly meaning a voter from another precinct) which would allow someone to match that voter's registration and the precinct results, and (2) "if he [someone trying to match a voter to a cast ballot to learn what choices that voter made on the ballot] c[ould] discover the algorithm used for the county, [he could] determine more of the voters' ballots" by writing an algorithm.  (Docket Entry No. 33-2 ¶¶ 9, 13, 20, 21).  He admits, however, that although he has "decoded the algorithm used for randomization in other states," he has "not reviewed the Harris County records."  (*Id.* ¶ 21, 22).  Weible's statement that he *might* be able to write an algorithm that *might* discover how some or all voters in Harris County vote in a future election is far too speculative to support a conclusion that Harris County's voting system places the plaintiffs at a "substantial risk" of having their identifiable voter information collected or ascertained in a future election.  *See Sierra Club v. U.S. Army Corps of Eng's*, 482 F. Supp. 3d 543, 559 (W.D. Tex. 2020) ("[S[peculation built upon further speculation does not amount to a

Entry Nos. 38-2, 39).  Even if considered, this affidavit does not support a conclusion that Kane suffers an imminent risk of future harm.  First, the affidavit against does not mention Kane; it describes how Wernick allegedly found the ballot of a non-plaintiff.  Second, Wernick's methodology appears to require searching for a specific voter by name, an aspect of his methodology mentioned nowhere in his prior affidavits or in the plaintiffs' pleadings.  (Docket Entry No. 38-2 ¶ 13 (describing how his search requires filtering by first name and last name)).  In any event, this affidavit also contains no information supporting a conclusion that there is a substantial risk that that Wernick (or anyone else) could identify Kane's specific ballot in a future election via this methodology, which still requires a voter to vote in highly specific circumstances.  (*Id.* ¶ 7).

'reasonably certain threat of imminent harm' and does not warrant injunctive relief." (quoting *Friends of Lydia Ann Chennel v. U.S. Army Corps of Eng's*, 701 F. App'x 352, 357 (5th Cir. 2017))); *Clapper*, 568 U.S. at 414 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

Even assuming that Wernick is correct that someone might learn how a Harris County voter votes in a particular election if that "voter is the only voter from a precinct to cast a ballot at a particular polling location during a particular voting period—either during Early voting or on election day" (Docket Entry No. 35-1 ¶ 9), the plaintiffs have not shown that this constellation of circumstances is likely to occur to them personally in the future. Assuming that Wernick's methodology is sound (which the defendants dispute, and the record does not establish), none of the plaintiffs have attempted to allege or assert that they are likely to, much less will, vote in such unique circumstances in the future. (Docket Entry No. 33 ¶ 20–22 (amended complaint); Docket Entry No. 35-1 at 40–52 (affidavits of Zimmern, Sommer, and Kane); Docket Entry No. 41-3 (interrogatory responses of Zimmern, Sommer, and Kane)). At most, Zimmern and Sommer express a possible preference for early voting, (Docket Entry No. 33 ¶¶ 20, 21), but they do not state that they intend to vote in remote polling places where they may be the only person from their precinct casting a vote at a particular date and time, or that they will engage in any other behavior that might put their identifiable voter information at a substantial risk of being collected or exposed under their own theory. *See Stringer*, 942 F.3d at 722 (concluding that the plaintiffs had not shown a substantial risk of future injury in part because they had not expressed an intention to move in the future).

Relatedly, that Kane has allegedly voted in a sufficiently unique circumstance that led Wernick—a uniquely determined vote excavator—to discover how she had voted, (Docket Entry

12

No. 35-1 at 51), is insufficient on its own for this court to conclude that there is a "substantial risk" that these circumstances could happen again. It is well established that past harm, without more, is an insufficient basis for declaratory and injunctive relief. *See Lyons*, 461 U.S. at 105; *O'Shea*, 414 U.S. at 495–96; *cf. Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021) (finding imminence likely when the plaintiff had been called twice for jury duty in the past, the potential jury pool was small, and the architectural barriers preventing the plaintiff from serving on a jury were insurmountable). Kane's past alleged injury cannot form a basis for injunctive relief in the absence of any other evidence—or even allegations—that her identifiable voter information is likely to be collected or exposed in such a manner again.

In short, there is no evidence (or even allegations) at this stage—where cross-motions for summary judgment have been filed—showing that there is a "substantial risk" or "credible threat" that Harris County is going to collect "identifiable" voter information about how any of the three plaintiffs votes in future elections. *See Driehaus*, 573 U.S. at 161, 158. It is even more speculative that a third party will use that information to ascertain how the plaintiffs cast their votes. Although Harris County is required by state law to collect voter information to promote the integrity of the voting process, the plaintiffs would still need to allegedly vote in the unlikely combination of circumstances they posit—being the only voter from their precinct to vote in a particular polling location at a particular time—for Harris County to collect "identifiable" information about their votes.[5] The plaintiffs provide no evidence to support, and barely even speculate, that such a

---

[5] The plaintiffs do not allege that it is the general collection of voter information that is the harm, but the collection of "individual voters' *identifiable* information." (Docket Entry No. 43 at 17) (emphasis added). Their response brief makes clear that, under their theory, Harris County only collects "identifiable" information when a plaintiff votes in sufficiently unique circumstances; the allegation is not that Harris County itself can determine the vote of every voter regardless of when and how that voter votes. (*See id.* at 25 ("The combination of check-in time (recorded), polling location (in CVRs and rosters), and ballot style (tied to geography) means that in small windows (e.g., early morning at a single location) individual

situation could occur to them personally in the future.  (*See generally* Docket Entry No. 43).  That is not enough for standing.  *See Clapper*, 568 U.S. at 415 (determining that there was no standing at the end of a chain of contingencies because "even if the Government were to conduct surveillance of respondents' foreign contacts, respondents can only speculate as to whether *their own communications* with their foreign contacts would be incidentally acquired").    Although Sommers alleges that he did not vote out of fear his ballot would be discovered—a fear he seems to overcome—the plaintiffs also cannot "manufacture standing" by inflicting harm on themselves where they have not demonstrated that such harm is "certainly impending." *Id.* at 416.

To the extent that the plaintiffs' response brief focuses on how Harris County collects information, intended to promote election integrity, that could allegedly allow it to identify the votes of *other* voters who vote in the unlikely circumstances the plaintiffs posit, that is "irrelevant" to the standing question before the court.  *See Stringer*, 942 F.3d at 721 ("Whether compliance with the [National Voter Registration Act] would prevent future injury to others is irrelevant; plaintiffs seeking injunctive relief must show a continuing or threatened future injury to themselves"); *Attala County*, 37 F.4th at 1043 (listing the contingencies that would need to occur for the alleged harm to happen and noting that "[y]es, those events have happened to others, but we find that the Plaintiffs have not demonstrated a 'real and immediate' threat or a 'substantial risk' that all those events will occur to one of them"); *Harrower as next friends of J.H.1 v. Eastland Indep. Sch. Dist.*, 786 F. Supp. 3d 998, 1015 (N.D. Tex. 2025) (concluding that there was no standing in part because the plaintiffs—parents of two minors—had not alleged a future injury that one of the minors would personally suffer rather than an injury potentially suffered by someone

---

votes can often be matched to specific voters" (citing Docket Entry No. 35-1 ¶¶ 7–9)).  The court also notes that the section of Wernick's affidavit that the plaintiffs cite to for this proposition does not actually contain the specific details asserted in the response brief.

14

else); *see also Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023) (concluding that the plaintiffs' argument that Travis County acted unlawfully by counting votes cast through an uncertified system was the kind of "generalized grievance" that did not meet the requirements for an injury-in-fact (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007))).

Without "[p]laintiff-specific evidence" showing that the harm to any of these three plaintiffs is "certainly impending," the plaintiffs do not have standing. *See Stringer*, 942 F.3d at 715 ("Plaintiff-specific evidence is needed before Plaintiffs' claims can properly be characterized as an attempt to remedy an imminent injury to Plaintiffs instead of a generalized grievance available to all Texas."). Because none of the plaintiffs have shown that harm to them is "certainly impending," the court dismisses for lack of standing and does not reach the merits. *See Vapor Tech. Ass'n v. Graham*, --- F.4th ----, No. 25-60694, 2026 WL 390894, at *2 n.12 (5th Cir. 2026) ("Without standing, a plaintiff cannot obtain injunctive relief because the court cannot reach the merits—and necessarily, the plaintiff cannot show likely success on the merits.").

## IV.    Conclusion

The plaintiffs appear intent on making Harris County change the way voters are allowed to vote. Harris County has shown that its method of running elections is allowed by state law and that its collection of information to ensure election audibility is required by state law. The plaintiffs have presented nothing more than speculation that Harris County's voting system collects information that *might* enable someone to identify, in an unlikely combination of circumstances, how some individuals vote in future elections. That speculation, which is not directly connected to assertions or evidence about these three specific plaintiffs, is far from enough for standing for the relief the plaintiffs seek. The court grants the defendants' motion to dismiss for lack of standing and does not reach the alternative request for summary judgment on the merits.

(Docket Entry No. 41).  The court denies the plaintiffs' motion for summary judgment as moot.

(Docket Entry No. 35).  The court denies the motion to strike as moot.  (Docket Entry No. 39).

The court will enter a separate order dismissing the case, without prejudice.

SIGNED on March 13, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge